IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LARRY JONES, <br> AIS # 165087, <br><br> Plaintiff, <br><br> v. <br><br> ALABAMA DEPARTMENT OF <br> CORRECTIONS, *et al.*, <br><br> Defendants. | CASE NO. 2:25-CV-83-WKW <br> [WO] |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Plaintiff Larry Jones, an inmate with the Alabama Department of Corrections (ADOC), was assaulted by other inmates on December 16, 2024, at Donaldson Correctional Facility.  Seeking monetary and injunctive relief under 42 U.S.C. § 1983, he sues the ADOC, five of its correctional officers, YesCare Corp., and Dr. Strickland.  The ADOC and five correctional officers (collectively, the ADOC Defendants) have moved to dismiss the Complaint on multiple grounds.  (Doc. # 24.)  One of these grounds is that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C.

§ 1997(e).  Plaintiff responded in opposition.[1]  (Doc. # 28.)  For the reasons explained, Plaintiff did not fulfill the PLRA's exhaustion requirement before filing this action, and, therefore, dismissal without prejudice is mandatory.

## II.  SUBJECT MATTER JURISDICTION

The ADOC Defendants also argue that Plaintiff lacks Article III standing due to insufficient allegations to establish causation, thus depriving the court of subject matter jurisdiction.  Challenges to Article III standing implicate the court's subject matter jurisdiction.  Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, challenges to subject matter jurisdiction can be either facial or factual.  *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).  The ADOC Defendants' challenge is facial.

To satisfy the causation element of Article III standing, a plaintiff must show that his injury is "fairly traceable" to the defendant's challenged conduct, but it does not require proximate causation.  *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019) (citation omitted).  At the "pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" as it is presumed on a motion to dismiss that "general allegations embrace those specific facts that are necessary to support the claim."  *Id.* at 1124 (citation and internal

---

[1] Plaintiff's motion for an extension of time to file a response to the motion to dismiss (Doc. # 27) is granted, and the response filed thereafter has been considered (Doc. # 28).

quotation marks omitted).  Furthermore, documents filed by *pro se* litigants must be "liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

The ADOC Defendants argue that, based on the absence of allegations identifying the individual correctional officers as the assailants or as being present during the assault, there is "no clarity as to how" they caused Plaintiff's injuries. (Doc. # 24 at 7–8.)  However, the ADOC Defendants' argument fails to address Plaintiff's allegations that the assault occurred due to "lax supervision" at the ADOC facility.  (*See, e.g.*, Doc. # 1 at 14; Doc. # 28 at 7.)  Although these allegations may require further detail and are not artfully pleaded, at this stage and given the absence of argument, it is presumed that the Complaint's general allegations imply supervisory liability.  Subject matter jurisdiction over this 42 U.S.C. § 1983 action is proper.

### III. DISCUSSION

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available have been exhausted." 42 U.S.C. § 1997e(a) (citing 42 U.S.C. § 1983). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Its purpose is to provide "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

### A.    Two-Step Process Under the PLRA for Deciding a Motion to Dismiss for Failure to  Exhaust Administrative Remedies

Exhaustion under the PLRA is a "standard affirmative defense" and is neither jurisdictional nor a pleading requirement. *Perttu v. Richards*, 605 U.S. 460, 469 (2025). "Deciding a motion to dismiss for failure to exhaust administrative remedies involves a two-step process." *McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025) (cleaned up).

In the first step, the court reviews the factual allegations presented in the defendant's motion to dismiss alongside those in the plaintiff's response. If there is a conflict, the court accepts the plaintiff's "version of the facts as true." *Id.* (quoting *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)). If dismissal is not warranted at the first step, the process moves to the second step, where the court "make[s] specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (quoting *Turner*, 541 F.3d at 1082). Once the district court resolves

4

the disputed factual issues, it then determines whether, based on those findings, the prisoner has exhausted his available administrative remedies.[2] *Id.* (citing *Turner*, 541 F.3d at 1083). Throughout this two-step process, the burden is on the defendant to prove that the plaintiff has not exhausted his "available administrative remedies." *Id.* (quoting *Turner*, 541 F.3d at 1082).

In this analysis, while the defendant initially must demonstrate the existence of an available administrative remedy, once this is established, the burden shifts to the plaintiff. *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020). The plaintiff must then show that the grievance procedure was "subjectively" and "objectively" unavailable to him. *Id.*

B.  **"Proper" Exhaustion**

The U.S. Supreme Court has held that the "[PLRA's exhaustion] provision 'requires proper exhaustion' of available prison grievance procedures, meaning a prisoner 'must complete the administrative review process in accordance with the applicable procedural rules . . . as a precondition to bringing suit in federal court.'" *Perttu*, 605 U.S. at 465 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006)). "Proper" exhaustion means *all* the administrative steps are followed, including an

---

[2] No party has argued that the *Perttu* Court's pronouncement—"that parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment," 605 U.S. at 479—which relates to *Turner*'s second step, is relevant here. Regardless, the motion is resolved at *Turner*'s first step.

appeal. *Allen v. Blakely*, 814 F. App'x 522, 526 (11th Cir. 2020) (quoting *Woodford*, 548 U.S. at 85). Determining the "boundaries of proper exhaustion" is done by examining "the requirements of the applicable prison grievance system." *McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025) (citation and internal quotation marks omitted).

**C.     The ADOC's Inmate Grievance Policy**

ADOC prisoners, like Plaintiff, are subject to the ADOC's Administrative Regulation Number 406 (AR 406), which established an inmate grievance policy, effective August 1, 2023. (Doc. # 24-1.) Under AR 406, copies of the policy and necessary forms, such as the inmate grievance form and grievance appeal form, must be readily accessible in each housing unit and law library. AR 406 § V.A. Grievances generally must be submitted within 10 days of the incident.[3] AR 406 § V.G.

For non-emergency grievances, the process starts when an inmate submits a completed grievance form. AR 406 § V.Z.1.a. The institutional grievance officer (IGO) must respond within 10 days of receiving the grievance. AR 406 § V.Z.1.d. If the inmate disagrees with the decision, he must submit a written grievance appeal

---

[3] The AR 406 provides limited exceptions to the 10-day time limit. Section V.G. imposes no time limit for incidents involving "an allegation of sexual abuse or sexual harassment," AR 406 § V.G, and section V.Z.1.a. exempts "an allegation of sexual abuse, sexual harassment, or any verbal or physical abuse or harassment" from the 10-day time limit, AR 406 § V.Z.1.a.

form to the IGO within 10 days of receiving the decision. Failure to appeal is considered acceptance of the decision. AR 406 § V.Z.1.e. Appeals are reviewed by the departmental guidance coordinator (DGC), who must issue a final decision on the grievance's merits, remedies, and requests within 60 business days of receiving the appeal. This decision must confirm that the inmate has exhausted all available administrative remedies. AR 406 §§ V.Z.2.a–.b.

If the inmate marks the grievance as an emergency, the IGO will receive a determination from the warden whether it qualifies as such. If it does, the warden must promptly address and document the emergency and the actions taken.[4] AR 406 § V.AA.1. If the inmate disagrees with the actions taken, he must submit his appeal within 24 hours of receiving it. The DGC then must decide the appeal within 72 hours. AR 406 §§ V.AA.3.–4. Without good cause, failing to appeal on time is considered either abandoning the grievance or accepting the decision. AR 406 § V.AA.3.

### D. Analysis of Proper Exhaustion in the Two-Step Process Considering the Parties' Arguments

In support of their motion to dismiss, the ADOC Defendants have submitted an affidavit from the DGC. The DGC attests that Plaintiff's allegations in the

---

[4] There are some exceptions regarding which official must resolve the emergency grievance. AR 406 § V.AA.1.

complaint are subject to AR 406's inmate grievance policy. Based upon her review of the inmate grievance logs, the DGC confirms that Plaintiff "has not submitted an inmate grievance related to this complaint." (Doc. # 24-2 at 1.) In Plaintiff's response, he does not dispute the ADOC Defendants' evidence that he failed to submit an AR 406 grievance regarding the assault by other inmates on December 16, 2024. (Doc. # 28 at 9.) Therefore, at the first step of the two-step process, there are no conflicting facts. *See McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025). Accordingly, the court finds that the ADOC Defendants have met their burden by demonstrating the existence of an available inmate grievance policy, AR 406, and establishing that Plaintiff did not submit a grievance regarding the assault. It is unnecessary, therefore, to proceed to the second step.

The burden now shifts to Plaintiff to show that the grievance procedure was subjectively and objectively unavailable. *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1354 (11th Cir. 2020). Plaintiff argues that he was transferred to Ventress Correctional Facility two days after the incident and that the AR 406 lacks a provision allowing an inmate to file a grievance arising at one facility while housed at another. (Doc. # 28 at 9; Doc. # 28-3.) He contends that transferring him to a different facility during the grievance period constitutes the ADOC Defendants' waiver of the defense. (Doc. # 28 at 9.)

As explained in *Geter*, the Supreme Court "has provided an overarching framework for evaluating the 'availability' of administrative remedies." 974 F.3d at 1355 (citing *Ross v. Blake*, 578 U.S. 632, 644 (2016)). In *Ross*, the Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." 578 U.S. at 643. Those three circumstances arise (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) when it is "so opaque that it becomes, practically speaking, incapable of use," for example, when "no ordinary prisoner can discern or navigate it," and (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

Plaintiff's contention does not fit within any of *Ross*'s specified categories. At best, it attempts to force the argument into the third category by alleging that Plaintiff's transfer to Ventress Correctional Facility impeded his ability to file a grievance. However, this argument is unavailing. Plaintiff fails to cite any provision in the inmate grievance policy indicating that a transfer to a different facility prevents an inmate from filing a grievance related to an incident at the previous facility. In fact, the AR 406 explicitly states that the policy and grievance forms must be readily available to inmates in each housing unit, the law library, or through approved

electronic means. *See* AR 406 § V.A. Additionally, under the policy, Plaintiff had 10 days from the date of the incident to file a grievance. According to Plaintiff's submission, he arrived at Ventress Correctional Facility two days after the incident, leaving him with eight days to access the necessary forms and file a grievance. (*See* Doc. # 28.) There is no allegation that any ADOC official prevented him from submitting a grievance form due to the transfer or that the form was unavailable or inaccessible at any time. In short, Plaintiff has not alleged any facts showing that his transfer made the grievance procedure subjectively or objectively unavailable to him.

Furthermore, Plaintiff's claim that his transfer to another ADOC facility constitutes a waiver of the exhaustion requirement lacks any legal or factual support. (Doc. # 28 at 9.) In particular, there is no legal authority cited to substantiate this argument, and the court's independent research found none.

## IV.  CONCLUSION

Based on the foregoing, it is ORDERED as follows:

(1)   Plaintiff's motion for an extension of time to file a response to the motion to dismiss (Doc. # 27) is GRANTED;

(2)   The ADOC Defendants' motion to dismiss (Doc. # 24) is GRANTED; and

(3)  Plaintiff's action against the Alabama Department of Corrections, Sgt. Jackson, Lt. Murry, Sgt. Matthews, Captain Watts, and Captain Sanders is DISMISSED without prejudice.

Plaintiff's action proceeds against Defendants YesCare Corp. and Dr. Strickland.[5]

DONE this 16th day of September, 2025.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

---

[5] In their Answer, these two Defendants assert the affirmative defense of failure to exhaust administrative remedies (Doc. # 18 at 2), but they have not raised it by motion for the court's review.